IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Marcus Leeotis Watts, ) | |
| ) | Civil Action No. 6:12-1867-JFA-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| William R. Byars, Agency Director; ) | |
| Steven J. Reck, Food Service ) | |
| Administrator; Willie F. Smith, ) | |
| Institutional Food Service Coordinator; ) | |
| Marcia Fuller, Dietician Head ) | |
| Nutritionist; and Wayne C. McCabe, ) | |
| Warden Lieber Correctional Institution, ) | |
| ) | |
| Defendants. ) | |
| ) | |

   The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

   This matter is before the court on the plaintiff's motion for summary judgment (doc. 25) and the defendants' motion for summary judgment (doc. 39). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

   The plaintiff filed a motion for summary judgment on October 29, 2012 (doc. 25). On November 5, 2012, the defendants filed their opposition. On December 10, 2012, the defendants filed a motion for summary judgment (doc. 39). By order filed that same

day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On December 27, 2012, the plaintiff filed a response in opposition, and the defendants filed a reply on January 3, 2013. The plaintiff filed a sur-reply on January 17, 2013.

## FACTS PRESENTED

The plaintiff is currently incarcerated at Perry Correctional Institution in the South Carolina Department of Corrections ("SCDC"). During the time period at issue in his complaint, the plaintiff was incarcerated in Lieber Correctional Institution. The named defendants are William R. Byars, Director of the SCDC; Wayne C. McCabe, Warden of Lieber; Willie F. Smith, Institutional Food Service Coordinator; Steven J. Reck, Food Service Administrator; and Marcia Fuller, a Nutritionist III for the SCDC.

Over the last several years, the plaintiff sent letters to SCDC officials and filed requests to staff and grievances expressing his concern about the SCDC's failure to provide a Halal[1] menu as a dietary option (*see* doc. 16). On November 25, 2011, and May 10, 2012, defendant Smith responded that the SCDC offers its menus to inmates based on nutritional guidelines rather than religious preference (doc. 39-3).

In her affidavit submitted in support of summary judgment, defendant Fuller testified that the SCDC's master and vegetarian menus are intended to accommodate a broad range of religious dietary practices while placing only minimal costs and burdens on dietary operations. According to Ms. Fuller, the menus, including the meals provided to the plaintiff, provide adequate nutritional and caloric value based on the recommended dietary allowances published by the Food and Nutrition Board of the National Research Council at

---

[1] Halal means "to kill an animal in the manner prescribed by Muslim law." *See* Oxford English Dictionary (2d ed.1989); *see also Shakur v. Schriro*, 514 F.3d 878, 882 n. 2 (9th Cir.2008) ("Halal meat is ritually slaughtered and prepared according to Islamic specifications. Muslims are instructed to eat meat only if it is Halal. Meat that is not Halal is referred to as Haram and is forbidden.").

2

the National Academy of Sciences. She further testified that the SCDC is unable to afford a dietary option that includes ritually-slaughtered animals due to the costs and practical limitations on prison storage, cooking, and serving capacities (doc. 39-1, Fuller aff. ¶¶ 5-7). According to Tamir A. Mutakabbir, who is employed by the SCDC as a Muslim Chaplain, a Muslim may accommodate his faith without Halal products where the availability of such products is beyond his control. Moreover, according to the Quran, if Halal products are not available, it is proper for a Muslim to eat vegetarian cuisine or meat (other than pork) prepared by Christian or Jewish people. According to Chaplain Mutakabbir, the SCDC offers inmates two choices, the master menu and alternative entree diet, neither of which contain pork and both of which are consistent with Islamic beliefs (doc. 39-2, Mutakabbir aff. ¶¶ 2-5).

The plaintiff disputes Chaplain Mutakabbir's interpretation of the Quran. He further contends that eating any meat that is not Halal (meaning the name of Allah is pronounced at the time of slaughter, and the animal being slaughtered is not in a state of fear) is forbidden. He argues that because he has filed the instant action the availability of Halal products is now within his grasp, and thus Chaplain Mutakabbir's interpretation that he may accommodate his faith without Halal products is not relevant (doc. 44 at pp. 3-4). The plaintiff alleges that he has received the SCDC's alternative/no meat diet since 2008 (doc. 1 at p. 5). In his opposition to the defendants' motion for summary judgment, the plaintiff states he is "malnutritioned [sic]" by the vegetarian diet and has lost 60 pounds as a result. He claims he weighed 235 pounds prior to his incarceration and that he weighed 175 pounds at the time he filed his opposition in December 2012 (doc. 44 at pp. 4-5). The defendants state that the plaintiff's SCDC medical records show that he weighed 200 pounds as of July 25, 2010, and the same entry describes the plaintiff as "well nourished." According to the defendants, the plaintiff changed his Religious Preference to Islam in February 2010. The defendants submitted SCDC medical records showing the plaintiff

weighed 211 pounds as of September 17, 2012 (doc. 46-1). In his sur-reply, the plaintiff argues that he has lost "several pounds" (doc. 48 at p. 4).

The plaintiff filed this action against the defendants on July 19, 2012, alleging violations of his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") based upon the SCDC's failure to accommodate his request for a Halal diet. The plaintiff seeks injunctive relief requiring the defendants to serve Halal meals and nominal damages and his costs incurred in pursuing this action.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is

insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *RLUIPA*

> Section 3 of the RLUIPA provides, in pertinent part:
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden ... (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). The Supreme Court has noted that lawmakers supporting the RLUIPA "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.' " *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (citation omitted). The plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. *See* 42 U.S.C. § 2000cc–2(b). The RLUIPA does not define the term "substantial burden"; however, the Supreme Court has stated "that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind.*

*Employment Sec. Div.*, 450 U.S. 707, 718 (1981)).  If a plaintiff satisfies this requirement, the government must then prove that the challenged policy is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc–1(a); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009).  "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." *Smith*, 578 F.3d at 250 (citation omitted).  In a recent RLUIPA case, the Fourth Circuit Court of Appeals noted that it had "required that the government, consistent with the RLUIPA statutory scheme, acknowledge and give some consideration to less restrictive alternatives" in order to show that its policy is the least restrictive means of furthering the identified compelling government interest. *Couch v. Jabe*, 679 F.3d 197, 203 (4th Cir. 2012).

Section 3 of the RLUIPA applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance" or "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b)(1)-(2).  The defendants first argue that the plaintiff failed to plead and prove that RLUIPA applies to this action.  Although the court agrees with the defendants that the plaintiff has not presented any evidence to show that the RLUIPA applies, the Supreme Court has opined in a footnote that the federal financial assistance requirement is met with respect to inmates housed in state prison systems. *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4 (2005) ("Every State ... accepts federal funding for its prisons.").  Accordingly, the court will address the merits of the plaintiff's RLUIPA claim.

In *Turner-Bey v. Maryland*, the United States District Court for the District of Maryland considered the issue of whether the lacto-ovo vegetarian diet, which included dairy products but no meat or fish, provided by the Maryland Division of Correction ("DOC") to Muslim inmates, in lieu of a Halal diet that includes ritually slaughtered meats, was an

undue burden on the plaintiff's free exercise of religion. The court concluded that DOC's failure to provide a Halal diet containing meat did not substantially burden the plaintiff's exercise of religion because the plaintiff did not maintain that he is religiously obligated to eat Halal meat. Rather, Islam prohibits eating meat that is not Halal. Accordingly, the court reasoned that Muslim inmates are "not asked to choose between violating a religious precept or depriving [themselves] of adequate nutrition; an alternative meat-free diet is available that is acceptable under Islamic law." No. JFM-10-2816, 2012 WL 4327282, at *8 (D. Md. Sept. 18, 2012). *See, e.g., Pratt v. Corrections Corp. of Am.*, 267 F. App'x 482, 482-83 (8th Cir.2008) (affirming the lower court's grant of summary judgment for the defendants on the RLUIPA and First Amendment claims on the ground that the plaintiff inmate had failed to show defendants placed a substantial burden on his ability to practice his religion by failing to provide him with Halal meat)*; Wells-Bey v. Kopp*, C.A. No. ELH-12-2319, 2013 WL 1700927, at *10 (D. Md. April 16, 2013) (finding that DOC did not violate the Constitution or RLUIPA by failing to provide inmate with a non-vegetarian Halal diet); *Malik v. Sabree*, C.A. No. 8:06–319–RBH, 2007 WL 781640, at *4 (D.S.C. Mar. 13, 2007) (finding SCDC inmate had not shown that his religious exercise was substantially burdened because he offered no evidence or argument opposing the Muslim Chaplain's affidavit stating that a Muslim may practice his faith without Halal products where the availability of such products is beyond his control, which is the case when incarcerated); *Boyd v. Lehman*, No. C05-0020-JLR, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006) (finding no substantial burden on exercise of religious beliefs because "[t]he ovo-lacto vegetarian diet which is provided to plaintiff does not require him to eat foods which are forbidden by his religion, it simply denies him one component of the diet which he contends should be provided."); *Abdul–Malik v. Goord*, No. 96 CIV. 1021(DLC), 1997 WL 83402, at *6-7 (S.D.N.Y. Feb. 27, 1997) (finding, after a bench trial, that a Muslim inmate's rights were not

7

violated by the prison's failure to provide Halal meat three times a week because a Muslim may eat an exclusively vegetarian diet without violating his religion).

Similarly to the cases cited above, this court finds that the plaintiff has failed to show that the defendants substantially burdened his right to the free exercise of his religion by providing him with a vegetarian menu rather than a Halal menu. As noted above, the defendants have submitted the affidavit of Chaplain Mutakabbir who attested that a Muslim may accommodate his faith without Halal products where the availability of such products is beyond his control. Moreover, Chaplain Mutakabbir attested that, according to the Quran, if Halal products are not available, it is proper for a Muslim to eat vegetarian cuisine or meat (other than pork) prepared by Christians or Jews. According to Chaplain Mutakabbir, the master menu and alternative entree (vegetarian) diet, neither of which contain pork, are thus both consistent with Islamic beliefs (doc. 39-2, Mutakabbir aff. ¶¶ 2-5).

The plaintiff argues that under the reasoning of *Hudson v. Dennehy*, 538 F.Supp.2d 400, 411 (D. Mass. 2008) and *Perez v. Westchester County Dept. of Corrections*, No. 05civ8120(RMB), 2007 WL 1288579 (S.D. N.Y. 2007), the SCDC's failure to provide Halal meals substantially burdens his right to the free exercise of his religion. As noted by the defendants, these cases are not binding on this court. Furthermore, the cases are distinguishable. In *Hudson*, the court emphasized the prison system's long standing practice of accommodating the dietary requests of inmates of other religions. 538 F.Supp.2d at 411. Here, the SCDC offers only two menu options in order to encompass a variety of religious-based diets. Furthermore, the *Perez* case was in a different procedural posture than the instant case. In *Perez*, the court considered the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and found that "it was premature" to say the plaintiff could not establish any set of facts sufficient to support a First Amendment claim. 2007 WL 1288579, at *3. Moreover, the "heart of the matter"

in the *Perez* case was that the defendants "refuse[d] to offer Muslim inmates the same kosher meat provided to Jewish prisoners." *Id.* at *1.

While the plaintiff argues that the vegetarian diet has had a detrimental effect on his health - claiming he lost 60 pounds (declining from 235 pounds to 175 pounds) and had dizzy spells since he started the vegetarian diet - the defendants submit that the plaintiff has actually gained weight, noting that he weighed 200 pounds in July 2010 and 211 pounds in September 2012, after he filed the complaint in this case (doc. 46-1). Defendant Fuller, who is a licensed dietician, has attested that the vegetarian menu provides adequate nutritional and caloric value based on the recommended dietary allowances published by the Food and Nutrition Board of the National Research Council at the National Academy of Sciences (doc. 39-1, Fuller aff. ¶ 5). Based upon the foregoing, the undersigned finds that the plaintiff has failed to show that the SCDC substantially burdened the free exercise of his religion by providing him with a vegetarian menu rather than a Halal menu.

Furthermore, even assuming that the SCDC's failure to provide a Halal diet constitutes a substantial burden on the plaintiff's religious exercise, the defendants must show that the policy in question is the least restrictive means of furthering a compelling government interest. This court finds that the defendants have met their burden.

According to defendant Fuller's affidavit, the SCDC is unable to afford a diet option for any religious group that includes ritually-slaughtered animals due to cost and practical limitations on prison storage, cooking, and serving capacities. Moreover, if the SCDC accommodated specific food requests, it would create the perception of favoritism among inmates and risk a flood of other inmate dietary requests. The SCDC would be obliged to accommodate other dietary requests based on religious preference throughout the penal system. These are legitimate penological concerns. "Numerous courts have recognized prison cost-control as a compelling interest." *Via v. Wilhelm*, C.A. No.

7:11cv00050, 2011 WL 5419709, at *6 (W.D. Va. Nov. 9, 2011) (collecting cases).  The defendants further argue that the cost of acquiring properly slaughtered Halal meat is significant.  Additionally, because Halal meat would have to be offered to all Muslim inmates system-wide, the extra cost would not be limited to the facility in which the plaintiff is incarcerated.  Furthermore, because not all facilities have sufficient storage space to devote exclusively to Halal food, the SCDC would require expensive facility improvements in order to separately handle, store, and prepare Halal meat in the quantities required.  Also, because Halal meat looks the same as regular meat and prison kitchen staffs are made up primarily of inmates with limited training, this could lead to improper substitution of food items.  Moreover, the SCDC would have to order Halal meat separately, import and unload the meat from different trucks, handle and store the meat in different kitchens, and serve the meat separately.  Accordingly, the defendants argue that the least restrictive means of furthering the compelling government interests described above is to offer the master and vegetarian menus based on nutritional guidelines rather than religious preference. *See Via*, 2011 WL 5419709, at *5-6 (finding that defendants demonstrated that the substitution of soy protein for Halal meat was the least restrictive means of furthering the compelling government interest of controlling prison costs); *Phipps v. Morgan*, No. CV-04-5108-MWL, 2006 WL 543896, at *9 (E.D. Wash. 2006) (finding that providing ovo-lacto vegetarian meals was the prison system's least restrictive means of furthering the compelling interests of reducing costs, streamlining food production, limiting the number of required staff, maintaining consolidation of vendors, and limiting security risks).

In his complaint, the plaintiff contends that alternatives such as "off the shelf" Halal items or frozen Halal meals should be considered (doc. 1 at p. 6).  However, he also states in his complaint that "a vegetarian meal prepared in a non-Halal kitchen is not Halal," and "Halal laws do not deal simply with whether a food item does or doesn't contain pork or other non-Halal animal products, but also with the source, storage, and preparation of

those ingredients, and the service of meals" (*id.*). Thus, the compelling interests raised by the defendants with regard to costs and facility improvements would remain an issue with regard to "off the shelf" Halal items or frozen Halal meals. The plaintiff also suggests that the SCDC charge a co-payment to prisoners who participate in the Halal meal program or the "district court could order community groups to provide food" (doc. 1 at p. 6). Again, these alternatives do not address the issues raised with regard to storage, facilities, and service of Halal meals or the SCDC's concern that it would be obliged to accommodate other dietary requests based on religious preference throughout the penal system, which would again raise costs. Furthermore, even if community groups volunteered to provide Halal meals to inmates, additional security concerns would be raised. Based upon the foregoing, the undersigned finds that the defendants have demonstrated that the least restrictive means of furthering SCDC's compelling interests is to offer the master and vegetarian menus based on nutritional guidelines rather than religious preference. Accordingly, summary judgment should be granted on the plaintiff's RLUIPA claim.

***First Amendment***

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. 1. "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Importantly, however, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482

11

U.S. 78, 89 (1987). The court considers four factors to determine if prison regulations are reasonably related to legitimate penological interests:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether the interest is "so remote as to render the policy arbitrary or irrational;" (2) whether "alternative means of exercising the right . . . remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

*Lovelace*, 472 F.3d at 200 (quoting *Turner*, 482 U.S. at 89–92). When applying these factors, the court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir.1991). The burden of proof under the *Turner* analysis is on the prisoner to disprove the validity of the prison regulation at issue. *See Overton*, 539 U.S. at 132.

The Fourth Circuit has explained the differences between the analysis of a First Amendment claim and a claim under RLUIPA:

> In its most basic protections, RLUIPA mimics the First Amendment. RLUIPA incorporates the "substantial burden" test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in allocating its burden of proof. . . . The primary difference . . . is that RLUIPA adopts a "more searching standard" of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness.

*Lovelace*, 472 F.3d at 198 n.8 (citing 42 U.S.C. § 2000cc-2).  As this court finds that the defendants are entitled to summary judgment on the plaintiff's RLUIPA claim under the "more searching" strict scrutiny standard, this court further recommends that the plaintiff's First Amendment claim be dismissed for the same reasons.[2]

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 39) be granted and the plaintiff's motion for summary judgment (doc. 25) be denied.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

June 10, 2013
Greenville, South Carolina

---

[2] As the undersigned recommends that the plaintiff's First Amendment and RLUIPA claims be dismissed on the merits as set forth above, the defendants' remaining arguments for dismissal of individual defendants and the plaintiff's particular requests for relief will not be addressed.

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).